WILLIAMSON, J.,
This matter comes before the court on the petition for contempt filed by Joseph Guardabascio, Jr. (father) filed June 17, 2014. Father’s petition alleged that Robin Guardabascio (mother) refused to allow the parties’ then 15 year old daughter, Olivia, to have a scheduled visitation pursuant to the existing court order, on Father’s Day, June 15, 2014. Father also alleged mother allowed Olivia to obtain a job without consulting him as her father. Father also requested modification of the prior custody order filed by a separate petition on June 17, 2014.
Both matters were scheduled and heard by the custody *41 conciliator on July 3, 2014. Following a conference with both parties, the custody conciliator made a recommendation that was adopted as an order of this court on July 18, 2014 addressing the requested modification. The court order set father’s physical custody periods as every other weekend from Friday at 6:30 p.m. until Sunday at 6:00 p.m., beginning July 11, 2014. As an apparent accommodation to the parties, due to Olivia’s work schedule, father’s period of partial physical custody of Olivia in July and August 2014 consisted of the August 22, 2014 weekend only. The matters giving rise to the contempt petition could not be resolved and a hearing was scheduled before this court on October 14, 2014,
At the time of the contempt hearing, both parties were present. Father testified that in addition to the matters raised in his contempt petition, mother had also refused to exchange the children for his scheduled weekend of September 5, 2014. Mother testified this was due to a church activity the children wanted to participate in on Sunday, September 7, 2014.
The parties reside more than two (2) hours apart. Father lives in Tannersville, Pennsylvania and mother lives in Toms River, New Jersey. Father testified that when he became aware that Olivia was working at a resort job for the summer, that may entail working on weekends, he tried to confirm in advance she would still visit the weekend of June 13,14 and 15. That weekend was father’s weekend for custody as well as Father’s Day on June 15, 2014. Additional testimony was that Olivia did not want to miss work, and she had chosen her schedule months in advance to be Thursday through Sunday. The parties then discussed Olivia getting off on Father’s Day (Sunday June 15, 2014) to go to father’s house. However, father *42 and mother could not reach an agreement as to the times, because father suggested a three (3) hour timeframe and Olivia did not want to incur the travel distance involved for such a short period of custody. As a result, Olivia did not go to father’s house for Father’s Day or for the rest of that weekend.
In reviewing father’s claims, we note that the September incident is not before the court by petition. However, we will address it upon the oral motion of father because it fits the overall problems mother and father are having in their lack of communication and failure to work together to resolve issues that invariably come up in any custody situation. Rather than discuss and resolve, both parents point to some other reason or excuse to justify actions.
For example, father has an issue with mother regarding Olivia’s choice to work rather than see him on an allotted weekend that included Father’s Day. However, father seems to understand his daughter’s wish to work, her weekend schedule due to the type of work, the commitment she has made, and he attempted to accommodate with a visit on Father’s Day only. Unfortunately, the issue of making that visit a reality centered more with father and Olivia’s preferences for the timing of the visit, and less to do with father and mother disagreeing with each other. Father also took issue in his petition with mother’s failure to consult him on Olivia’s decision to work, despite appearing unaware she worked there last year as well.
Mother reacts similarly to father. For example, she minimized the fact she did not send the kids to father for his weekend in September, because father had not taken the children for all of his allotted time in the past. Also, the event was a church event on a Sunday only, but mother and father could not find a compromise for the rest of the *43 weekend. It does not appear that mother considered or asked father to simply return the children early to attend the church function.
There is no dispute the children did not go to father’s on his weekend of custody in September, nor did Olivia go on father’s weekend, including Father’s Day, in June 2014. We agree that father did not get his time of custody pursuant to the court order. We agree with the recommendation of the custody conciliator, and ordered by the court, to try and resolve the issue of Olivia working, with only a visit in August. But these two (2) instances are the type of matters that should be resolved by the parties, with some give and take by both. They are not matters, unless taken in a different context, or in a repeat manner, that the court need take action or be involved.
For instance, Olivia (age 16) is at a time in her life where she is going to be involved in many things and with different priorities in her mind. The parents will need to encourage and foster the positive things in her life that are important to her, including working. The court understands father’s desire to see his daughter over the summer per the court order. However, we also understand a summer job for a teenager can be important, both to them, and for the responsibilities it bestows. One of the problems present here is the distance mother and children live from father. It prevents making up the time when the kids have other things to do. This prevents frequent contact and quality custodial time for both parents. It is also noted that Olivia, a teenager close to becoming an adult, is likely less inclined to cooperate in doing things she does not want to do. It is not an excuse; but, it is a reality with which parents have to reconcile. On the one hand, a father will want to spend time with a teenage child, but on the other, faces potential *44 alienation if preventing the teen from doing things, like working.
This is the same for the children’s church activity in September 2014. In a perfect situation, the children would have the activity on mother’s weekend of custody, or father would live close enough to take them himself during his custodial time. As that was not possible in these two (2) instances the parties need to work together to make concessions for the benefit of each parent as well as the children. No custody order can address every circumstance that will arise. To remain absolutely rigid in following an order, will result in either important events missed by children, or contempt petitions, or both. There has to be flexibility by both parties to serve both the best interests of the children and to avoid conflict.
We find that mother is in contempt of the plain language of the custody order for the missed weekend in September 2014. We decline to find mother in contempt for failure of Olivia to go to father’s weekend and Father’s Day in June 2014, or for failing to consult father before Olivia obtained employment. We will grant father one additional weekend of custody in November or December 2014 of his choice as a result.
It also was apparent to the court that the parties are unable to communicate with each other. We believe both parties can try harder and make attempts to communicate for the benefit of their children. However, we will also order that the parties participate in the Our Family Wizard program to communicate and document their communication attempts with each other.
ORDER
And now, this 23rd day of October, 2014, following a *45 contempt hearing, the court hereby finds the defendant, Robin Guardabascio to be in contempt of court. It is the order of this court as follows:
1. Plaintiff, Joseph Guardabascio, Jr., shall have one additional weekend of custody of his choice in either the months of November 2014 or December 2014 that would have been a weekend of custody of the defendant, Robin Guardabascio, under the current custody order;
2. The parties shall within ten (10) days hereafter, engage the services of Our Family Wizard for communicating and scheduling custody. The parties should take note of the ability to request and consider changes to the current custody schedule and trading dates/ times as necessary. The parties shall utilize this program, but are encouraged, in addition to the program, to have further communication in attempts to accommodate their children’s schedules as well as their own. The court administrator shall immediately send the information on Our Family Wizard to both parties.